440 P.2d 100

**STATE of Arizona, Appellee,**

v.

**Clifford Lee McGONIGLE and
Freddy D. Allen, Appellants.**

**No. 1787.**

Supreme Court of Arizona.

In Banc.

May 1, 1968.

Rehearing Denied June 4, 1968.

268

Darrell F. Smith, Atty. Gen., by Carl Waag, Asst. Atty. Gen., for appellee.

Boltz, Odegaard, Mignella & Willis, by Blake Willis, Phoenix, for appellants.

BERNSTEIN, Justice.

Appellants, Clifford Lee McGonigle and Freddy D. Allen, were convicted of first degree burglary with prior felony convictions in violation of A.R.S. §§ 13-301, 13-302, and 13-1649. Allen was sentenced to serve a term of not less than ten nor more than twenty-five years in the Arizona State Prison and McGonigle was sentenced to a term of not less than fifteen nor more than thirty years.

Appellants were arrested by the police in Phoenix, Arizona when they were found inside a closed gas station at approximately 2:00 A.M. on July 31, 1966.

At the threshold appellant Allen contends that he was deprived of his constitutional right to the assistance of counsel when the lower court forced him to stand trial without providing counsel for him. In order to analyze this contention it is necessary to quote at length from the minute entries made in this case. On September 13, 1966 the Superior Court of Maricopa County made the following minute entry:

"Harold Martin present for the State. BOTH DEFTS. present without counsel. Art Klein, Court Reporter, present.

"BOTH DEFTS. are questioned as to their ability to employ counsel.

"AS TO BOTH DEFTS: IT IS ORDERED appointing the Office of the Public Defender to represent BOTH DEFTS. *for purposes of arraignment only.*" (Emphasis added.)

Subsequently, on September 23, 1966, at a hearing for determination of counsel, the court's minute entries note:

 \* \* \* \* \* \*

"(JOHN CONTRERAS IS COUNSEL FOR McGONIGLE) Harold Martin present for the State: Deft. FREDDIE D. ALLEN present without counsel. Lois Carpenter, Court Reporter, present.

"Court advises the Deft. to try and make arrangements with John Contreras or other counsel to represent him."

\* \* \* \* \* \*

On September 30, 1966 the court made the following minute entry:

\* \* \* \* \* \*

"Deft. sworn as to his ability to employ counsel.

"IT IS ORDERED appointing the Office of the Public Defender to represent the Deft. for all purposes concerning this cause.

"*Deft. will continue trying to hire private counsel.*" (Emphasis added.)

The record further reveals that on November 29, 1966, Allen asked John Contreras to represent him, and that Contreras agreed to do so if Allen gave him a retainer. However, on January 19, 1967, the court allowed Contreras to withdraw as counsel because he had not been contacted by Allen with regard to the case and he had never received the retainer. At the same time the court entered the following minute entry:

\* \* \* \* \* \*

"IT IS FURTHER ORDERED that the defendant Freddy D. Allen obtain legal counsel and be prepared for trial upon that date [January 26, 1967], or the case will proceed to trial without counsel for defendant."

We should note that before the trial commenced the judge found, after a lengthy discussion with defendant Allen, that he was not indigent but had neglected to make any effort to obtain private representation.

In the landmark case of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799, the Supreme Court of the United States held that the right of an indigent defendant in a criminal trial to have the assistance of counsel is a fundamental right essential to a fair trial, and that an indigent's trial and conviction without the assistance of counsel violated the Fourteenth Amendment. Our own constitution,

Art. 2, § 24, A.R.S., guarantees the right to counsel together with other rights. The problem in this case, however, is whether appellant Allen was an indigent so as to require appointment of counsel.

Under Rule 163, Rules of Criminal Procedure, 17 A.R.S., it is incumbent upon the trial court, before the defendant is arraigned for the commission of a felony, to ask him if he wishes the aid of counsel and if he answers in the affirmative, and declares, under oath, that he has no means to employ private counsel, then the court *must* assign counsel for him.

■ In the case before us numerous hearings were held to determine whether Allen was indeed an indigent. The record shows that counsel was appointed for purposes of arraignment alone, and that subsequently the court made entries which referred to the fact that Allen was trying to find private counsel. It is apparent that the court at no time found Allen to be indigent. The Public Defender was appointed, in essence, as interim counsel until private representation could be arranged. Appellant has failed to show us where he declared under oath that he was indigent, and indeed the court's finding is to the contrary. Although an accused felon must be provided with an attorney if he has insufficient means to employ his own, this right does not extend to those who are not indigent.

■ In connection with this first assignment of error appellant McGonigle raises the novel argument that the failure to provide counsel for Allen prevented McGonigle from receiving a fair and impartial trial. This contention, however, is devoid of merit, for there is absolutely nothing in the record to indicate that McGonigle was deprived of a fair trial or that his rights were prejudiced.

■ Appellants next contend that the trial court erred in refusing to grant a motion for mistrial because of improper conduct by the prosecution in allowing the jury to see a pair of work gloves found

at the scene of the crime when the items could not be connected with either the crime or the appellants. However, the record discloses that the gloves, offered as Exhibit Six, were found in the service station by the police, and that the owner of the service station testified that the gloves were not in the station when he locked up that evening. As we see it, this evidence may create an inference that the gloves were brought to the scene by the appellants. Nonetheless, since the trial court refused to admit the exhibit in evidence we fail to see how appellants could be prejudiced thereby.

 Appellants further argue that State's Exhibit Eight was improperly admitted into evidence. Exhibit Eight consisted of an envelope containing $14.75 in coins which were taken from McGonigle's pockets when he was arrested. It is argued that no proper foundation was laid for the admission of this exhibit in evidence since the coins were not initialed by the officer and he could not account for a continuous chain of custody. Yet the officer had put his mark on the envelope and positively identified it. The pertinent testimony of the police officer follows:

"Q. You say you searched Mr. McGonigle and Mr. Allen?

"A. I did.

"Q. What, if anything, did you find on them?

"A. I found $14.75 in coins on Mr. McGonigle."

* * * * * *

"Q. What did you do with it?

"A. I placed it in the envelope and placed it in the police property locker as evidence.

"Q. I will show you what has been marked as State's Exhibit 8 for Identification and ask if you can identify that envelope and its contents? Please open it and look in it.

"A. Yes, I can.

"Q. And, did you place those coins in that envelope yourself?

"A. I did."

* * * * * *

"Voir Dire Examination

"BY MR. CONTRERAS:"

* * * * * *

"Q. Did you mark any of the coins?

"A. No, not the coins themselves.

"Q. You just marked the envelope?

"A. Yes."

* * * * * *

"Q. Where is your mark?

"A. I wrote this.

"Q. You can identify that as your writing?

"A. Yes, I can."

* * * * * *

In light of this testimony, clearly showing identification of the exhibit, we are of the opinion that the envelope and coins were properly admitted in evidence. As we said in Witt Ice & Gas Co. v. Bedway, 72 Ariz. 152, 157, 231 P.2d 952:

"It is not necessary that the article be identically the same as at the time in controversy, and it is also unnecessary to show an absence of tampering on the part of every person through whose hands the article has passed; *as long as the article can be identified it is immaterial in how many or in whose hands it has been.*" (Emphasis added.)

See also, State v. Sherrick, 98 Ariz. 46, 402 P.2d 1.

 Next, it is argued that the trial court committed reversible error when it failed to grant a motion for mistrial after the prosecutor asked Louis Kirby, one of the defense witnesses, the improper question of whether he had been arrested on the evening of the burglary. An objection was immediately made and the court admonished the jury to disregard the question. We have repeatedly held that similar questioning is not proper impeachment. See State v. Enriquez, 102 Ariz. 402, 430

P.2d 422; State v. Singleton, 66 Ariz. 49, 182 P.2d 920. In the case at bar, however, the court carefully admonished the jury to disregard the unanswered question. Moreover, although we find this type of question insidious, we do not believe that here it prejudiced the appellants' chances for a fair trial. Since the question was not asked of either appellant but rather of a defense witness we are of the opinion that the admonition to the jury prevented any harm to the appellants.

■ Appellant McGonigle further contends that the trial court should have granted a mistrial, regardless of his failure to ask for one, when the prosecution asked a police officer whether McGonigle offered any explanation for the money found in his pockets. We should note that this question was withdrawn by the prosecutor and never was answered. The issue thus raised is whether the mere asking of such a question is inherently so prejudicial that it requires a mistrial. Appellant Mc-Gonigle argues that such questioning creates an inference that appellant's silence amounts to guilt. Furthermore, he contends that since the United States Supreme Court has held it unconstitutional to comment upon a defendant's failure to testify, Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed. 2d 653, that, therefore, to allow the jury to draw an inference from mere silence is to compel him to testify. Where a question is asked and then withdrawn the jury should not draw any inference from the mere asking of the question. See State v. Izzo, 94 Ariz. 226, 383 P.2d 116.

■ Appellants' next assignment of error raises, in substance, the issue of whether the prosecutor's remarks, in his closing argument, constituted a comment on the failure of appellants to testify. In the opening statement made by counsel for McGonigle it was stated that appellants were at the scene of the crime to make a telephone call. Neither appellant testified at the trial. In his closing argument the prosecutor made the following statement:

"Now, Mr. Contreras in his opening statements to the effect of their having been near there intending to use the phone and they were curious and they walked inside, curiosity killed the cat, or something of this nature was his expression and you got to consider this explanation in light of the evidence that was shown in light of how reasonable this kind of explanation is.

"You have heard no evidence as to their intending to make a phone call at all. No evidence that defense put on established anything that Mr. Contreras said he was going to show in his opening statements."

As we see it, there is nothing improper in the prosecutor pointing to the deficiencies in the appellants' version of the evidence. Where defense counsel promises to prove certain facts and fails to do so the prosecutor can comment on this failure of proof. Here the remarks made by the county attorney do not violate A.R.S. § 13–163, subsec. B which prohibits using the defendant's failure to testify against him. See, State v. Acosta, 101 Ariz. 127, 416 P.2d 560. In addition, in the case at bar, the trial court carefully instructed the jury that they could neither infer guilt from the failure of appellants to testify nor could they even discuss the matter.

■ The next issue raised by appellants is whether the trial court erred in refusing to grant a motion for mistrial after the prosecutor displayed a copy of the Information to the jury in closing rebuttal argument, to which was attached an Addendum charging prior conviction. The trial court polled the jury after they returned guilty verdicts at the close of the case in chief and questioned them as to whether they had seen the Addendum attached to the Information. Since none of the jurors had seen the "dangling prior" the court denied a motion for mistrial. We simply fail to see how appellants

could be prejudiced where the Addendum was not seen by any of the jurors, and consequently we hold that the lower court properly refused a motion for mistrial.

Finally, appellants contend that the evidence of prior convictions was insufficient, and that the trial court erred in failing to give additional instructions to the jury with reference to the burden of proof.

The evidence of prior convictions consisted of Exhibits 10 and 11, which were exemplified copies of judgments of the Superior Court of Maricopa County, stating that Clifford Lee McGonigle and Fred Allen had been convicted of the enumerated felonies charged in the Addendums to the Informations. Attached to the same exhibits were the fingerprint records and photographs of the respective defendants. All of these instruments were certified as true copies of the originals by the legal custodian of the records at the Arizona State Prison.

 As we said in State v. Pennye, 102 Ariz. 207, 427 P.2d 525, 526:

"When a prior conviction is alleged in an information it is incumbent upon the state to prove: (1) that the defendant in the present case and the one convicted in the prior case are the same individual, and (2) that there was in fact a prior conviction."

Merely because there were slight dissimilarities in the names of the defendants who had been previously convicted does not mean that the state has failed to carry its burden of proof, for as we stated in the similar case of State v. Baca, 102 Ariz. 83, 425 P.2d 108, 112:

"The evidence not only contains a detailed description of the Anthony Baca who was convicted in New Mexico, *but also includes prison photographs or 'mug shots'. The evidence was sufficient to support the finding of the jury that defendant was convicted of a felony in the State of New Mexico.* State v. Smith, 98 Ariz. 45, 401 P.2d 739." (Emphasis added.)

In the case at hand the jury could easily look at the photographs and compare them with the defendants on trial. We hold that the evidence was sufficient for the jury to find that appellants had suffered prior felony convictions. See also, State v. Reed, 56 Wash.2d 668, 354 P.2d 935.

Moreover, since the trial court instructed the jury at the end of the case in chief that the state had the burden of proving every material fact in the information it was under no duty to repeat that instruction before the jury retired to deliberate on the issue of prior conviction.

Judgment affirmed.

McFARLAND, C. J., UDALL, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.